## WILSON vs. THE STATE.

[INDICTMENT FOR GAMING.]

1. *Objections to petit jurors.*—In the organization of the jury for the trial of a person charged with a misdemeanor, the State having objected to three of the jurors on the regular panel, "the court, before permitting their places to be filled, required the defendant to make his objections to the remaining nine"; and the defendant having objected to three of them, "the court directed the sheriff to summon six jurors of the other regular panel, to supply the places of the six thus objected to, and required the State and the defendant to select out of the six jurors so summoned." *Held,* that the action of the court was not erroneous.
2. *Broker's office public house, and, prima facie, entirety.*—A broker's office is a public house, within the prohibition of the statute against gaming; and where such office consists of two rooms, front and back, connected by a door, and the front room is used for the transaction of the broker's business, and contains all his books, papers and money, the back room is equally within the statutory prohibition, although used and occupied as a sleeping room by a member of his family, who paid no rent.

APPEAL from the Circuit Court of Madison.

Tried before the Hon. WILLIAM M. BROOKS.

THE bill of exceptions in this case is as follows:

"In the organization of the jury in this case, preliminary to the trial, the State objected to three of the jurors who were on the regular panel No. 1; and the court, before it would permit their places to be filled, required the defendant to make his objections to the remaining nine jurors; the defendant objecting to this action of the court, and excepting to the overruling of his objection. The defendant having then objected to three of said jury, the court directed the sheriff to summon six jurors from the regular panel No. 2, to supply the places of the six thus objected to, and required the State and the defendant to select out of the six jurors so summoned from the regular panel No. 2; to which ruling of the court, in limiting the summons as aforesaid, the prisoner objected, and excepted to the overruling of his objection.

"After the case had gone to the jury, the following

evidence was introduced : It was proved, that the defend-
ant, within twelve months before the finding of the indict-
ment, had played at cards, at night, in the back room of
Neal & Fariss' office, in the town of Huntsville in said
county; that said office was rented by Neal & Fariss, and
had two rooms; that the front room opened on the street,
and had a door and one window, (the window having a
wooden shutter, not latticed,) and was used and occupied
by them as a broker's office, where they dealt in money,
and bought bills of exchange; that they kept their money,
books, and every thing else connected with their business,
in said front room, and there transacted all their business;
that they never transacted any business after night, but
always in the day time ; that their office was never open
at night, and no lights were ever put in said front room
after night, and no one ever called at their office after
night to transact any business with them ; that the front
door of said front room was always closed at nightfall,
and so was said front window, and the shutter to the
window was always fastened at night; that the front door
of said front room was at the right corner of the room ;
that there was a door between the two rooms, which was
at the left-hand corner of the back room ; that a person
standing in said front door, with the door between the two
rooms open, could not see into said back room; that said
back room was occupied as a sleeping-room by one Wil-
liam Wilson ; that all the furniture in said room, except
the chairs, consisting of a bed, wardrobe and wash-stand,
belonged to the said Wilson; that said Wilson, when at
home, always slept there, and no one else used it in his
absence; that said room had one window and a back-door,
both opening on a brick wall in the rear, which was eight
feet from said room, eight feet high, and run the whole
length thereof; that said window had a wooden shutter,
not latticed, which was always closed; that the back-door
was generally closed, and, when open, no one could see
into the room on account of said wall ; and that the play
ing, for which this defendant is indicted, occurred at night
in this room.

"It was proved, also, that there was never any card-

Wilson v. The State.

playing in said back room, except at night, and never any in said front room; that the front door and window were always closed when there was any card-playing in said back room; that there was never any card-playing in said back room when there were any lights in the front room, or when any business was being transacted in said front room; that the door between the two rooms was generally closed at night, and, when closed, no one in the front room could see into the back room; that there was no transom light over said door; that Neal & Fariss and said Wilson had each a key to said front room; that there was but one key to the middle door, which remained in the lock, and was always on the inside of the back room; that the usual way of getting to the back room was through the front room; that cards were frequently played in said back room at night; that the character of the game was generally controlled by said Wilson, who always directed when the game should break up, as well when Neal & Fariss played there, as when they did not; that cards were sometimes, but not often, played in said room at night, when Wilson was not there; that persons generally had no right to go there, to play cards; that the playing there was confined to the particular friends of said Wilson and Neal & Fariss, from eight to ten in number; that if any one else had gone there, it would have been considered a breach of propriety; that the partners of the firm of Neal & Fariss were both married men, and slept at their respective houses; that said Wilson was the brother-in-law of Fariss, and took his meals at his house; that Neal & Fariss charged him no rent for said back room, but got him to sleep there at night, because they had large sums of money in the front room, and as a protection thereto; that the door between the two rooms was generally open by day, and Neal & Fariss were frequently in there during the day; that they kept their drinking water in said room, and had the right of ingress and egress at any time during the day; that when the front door and window were closed, no one could see into either of said rooms, nor could any one see into the back room when the middle door was closed, nor could any one

from the street or front door see into the back room when
the front and middle doors were open, nor could any one
from the rear see into the back room when the rear
window and door were closed, or even when the rear door
was open, because of said wall.

"This was all the evidence in the cause; and thereupon,
at the request of the solicitor, the court charged the jury,
that if they believed the evidence, the place where the
card-playing occurred was a public house, and they must
find the defendant guilty; to which charge the defendant
excepted."

WALKER, CABANISS & BRICKELL, for the appellant.

M. A. BALDWIN, Attorney-General, contra.

RICE, C. J.—The manner of organizing a jury, for the
trial of a person charged with a misdemeanor, is not par-
ticularly prescribed by the Code, but is regulated by the
general provisions contained in the following sections
thereof:

"§ 3474. To dispose of the petit jurors for the trans-
action of business, the clerk must, on the day on which
they are summoned to attend, prepare by lot a list of their
names; the first twelve must be sworn, and called the
first jury; the next twelve must then be sworn, and called
the second jury; and if there are any more petit jurors in
attendance, they may be placed on a third jury, or put on
either of the other juries, as occasion may require; and
the jurors may be transferred from one jury to another, as the
convenience of the court or the dispatch of business
requires."

"§ 3475. When, by reason of challenges, or any other
cause, it is necessary, the court may cause petit jurors to
be summoned from the by-standers, or the county at large,
either to supply the deficiency on juries, or to form one or
more entire juries, as the occasion requires."

These provisions distinctly recognize the right of chal-
lenge, as secured and regulated by other sections of the
Code. But they clearly authorize the circuit court, in
the case of a misdemeanor, as well as in every other case

to which they are applicable, to put upon the State and the defendant *at once*, for acceptance or challenge, twelve of the regular petit jurors, or *a smaller number*, and to *transfer* regular petit jurors from one jury to another. In such a case as this, a discretion as to these matters is conferred upon the circuit court; the exercise of which will not furnish cause of reversal, unless the right of challenge, or some other right of the defendant, appears thereby to have been denied or impaired.—Haight v. Holley, 3 Wend. R. 258. It does not appear in this case, that any right of the defendant was denied or impaired by the action of the court below in relation to the organization of the jury to try him.

2. Upon the evidence, and the former decisions of this court, it is clear that the front room of "Neal & Fariss' office," is a public house within the meaning of section 3243 of the Code. It is equally clear that the back room of the office partakes of the character of the front room, unless the occupation of the back room by William Wilson prevents that result. If the said Wilson had *rented and occupied* it for his sleeping apartment, it may be conceded, that it could not have been regarded as a public house within the meaning of said section 3243.—Dale v. The State, 27 Ala. R. 31. But he had not rented it. He held it, not for himself, but for Neal & Fariss; not as their tenant, but rather as their servant; and as part of the family of Fariss, who was his brother-in-law. He could not have maintained trespass against them, or either of them, for entering that room. They could have turned him out of it when they would. They could have declared on his occupation of it, as their own occupation. His occupation of it was, in law, their own occupation.—Bertie v. Beaumont, 6 East's Rep. 33; The King v. Stock, 2 Taunton's Rep. 340; 2 East's Crown Law, 500–503. Regarding, as we must do, the occupation of the back room of their office as in law their occupation, it was as much a public house, within the meaning of section 3243 of the Code, as the front room, as is fully shown by our previous decisions.—Huffman v. The State, 29 Ala. R. 40; Arnold v. The State, *ib.* 46; Brown v. The State, 27 *ib.*

47; Burnett v. The State, 30 *ib.* 19; Moore v. The State, and Cochran v. The State, at the last term.

There is no error; and the judgment of the court below is affirmed.