## BENTLEY *vs.* THE STATE.

#### [INDICTMENT FOR GAMING.]

1. *Saddler's shop held public house, and, prima facie, entirely.*—A building in which the business of a saddle and harness maker is carried on, is a "public house" within the meaning of section 3243 of the Code ; and where such building consists of two stories, the lower of which is used by the owner for the purpose of carrying on his said business, a back room in the second story, accessible only by an external stairway, and used by a journeyman of the owner as a sleeping room, is within the prohibition of the statute, when it is shown that the room was not rented by the owner to the said occupant, but furnished to him under the contract of employment, which bound the owner to board and lodge the latter.

APPEAL from the Circuit Court of Talladega.
Tried before the Hon. ROBERT DOUGHERTY.

The prisoner in this case, Joseph Bentley, was indicted for playing cards "at a public house or public place," and, on his trial, reserved the following bill of exceptions to the rulings of the circuit judge:

"On the trial of this case, the State elected to proceed for playing at a public house, and introduced a witness who testified that he had seen the defendant, since the 1st January, 1858, and before the finding of this indictment, play at a game with cards in a room occupied by

one Bentley, in the town and county of Talladega, over a saddle and harness maker's shop in said town. The proof showed, also, that the building in which said room was situated was of two stories; that the lower story was divided into two rooms, communicating by a door through the partition; that the front room was used to display the saddles and harness ready for sale, and the back room was used to make them in; that there was no way of communication within from the lower rooms to those in the upper story; that the rooms in the upper story were entered by means of a private stairway, entirely separate and distinct from the lower rooms; that this stairway was entered by an outside door, which opened on the street, and was in the same front with the business department; and that the upper story was divided into two rooms, entirely separated from each other, and entered by separate doors from the landing at the head of the said stairs.

"The owner of the building testified, that he built the said house in this manner, for the purpose of carrying on his business (making and selling saddles and harness) in the lower story, and had always used the lower rooms in that manner; that he had built the upper rooms in the manner above shown, to rent out to other persons, and had never used or occupied them in any way in connection with his business carried on in the lower story, except as shown by the proof in this case; that he never put any articles of goods, wares or merchandise into the upper part of said building, and never took any of his customers there to transact any business with them; that the front room was occupied, since 1st January, 1858, by one Brown, to whom he had rented it as a sleeping apartment; that the back room up stairs, where the playing took place, had been used, from the 1st January, 1858, by said Bentley as his private sleeping room or apartment; that said Bentley had worked for him, since the 1st January, 1858, as a journeyman saddle and harness maker, in the shop which witness carried on in the lower story of the building as above stated; that he paid Bentley so much per month for his services, and, by the terms of their contract, was bound to board and lodge him; that

he paid for said Bentley's board at a boarding-house in the town; that he put a bed in the back room up stairs at the beginning of the year 1858, and put Bentley into it as a room in which he was to lodge, Bentley preferring it to a room in the boarding-house; that he gave the key of the room to Bentley, who had kept it ever since; that he did not regard himself at liberty to put anything into said room, since he had given possession of it to Bentley as aforesaid, without first telling him that he wanted the room; that he had not, in point of fact, exercised any control over it since he put Bentley into possession of it; that there was nothing in his contract with Bentley to prevent him from controlling the room if he chose, but he would not have taken possession of it without telling Bentley that he wanted it.

" The witness *Bentley* (?) testified, that at the time he took possession of said room as his private apartment, had the exclusive possession of it, kept the key in his pocket, and kept the room locked except when in it; that he employed and paid a negro to make up his bed, and wait on him at his room; that said negro was not the servant of his employer; that on the night when said playing took place, he had invited two or three of his friends to his room; that before the playing commenced, they locked the door at the foot of the stairs, which opened into the square, and also the door of the room in which they were; and that they then let down the curtains.

" This was all the evidence; and thereupon the court charged the jury, that if they believed the evidence, they must find the defendant guilty; to which charge the defendant excepted," &c.

PARSONS & J. WHITE, for the appellant.

M. A. BALDWIN, Attorney-General, *contra.*

RICE, C. J.—Although, by the terms of the contract between the owner of the building and Bentley, the former was to board and lodge the latter; yet, Bentley did not rent the room in question from the owner, nor have

any title of tenancy to it, as against the owner; but occupied it as a mere boarder or lodger. His occupation of the room was in the nature of an occupation by a mere servant of the owner, and was, in law, the occupation of the owner. The owner might, at any time, against the wish of Bentley, have entered the room, without being guilty of a trespass, or might have removed him from the room in question to another room in the same town, without any violation of his contract. The room must, therefore, be regarded, so far as 3243 of the Code is concerned, not as a room rented by the owner to another, but as the room of the owner, held and occupied by Bentley for him, and as much in the possession of the owner, as if it had been personally occupied by him.—Wilson v. The State, 31 Ala. 371, and authorities there cited. And upon the authority of Wilson v. The State, *supra*, and the cases therein referred to, the judgment in the present case must be affirmed.