# CASES

IN THE

# SUPREME COURT OF ALABAMA.

## DECEMBER TERM, 1876.

## Smith *v.* The State.

*Indictment against Retailer of Spirituous Liquors.*

1. *Constitutionality of act of March 18, 1875, "to render more explicit and to provide for the better enforcement of the provisions of law in reference to the sale or giving away of spirituous, vinous, or malt liquors."*—The act approved March 18, 1875, entitled "An act to render more explicit and to provide for the better enforcement of the provisions of law in reference to the sale or giving away of spirituous, vinous, or malt liquors in this State" (Sess. Acts 1874-5, p. 280), is not violative of the constitutional provision, contained in the second section of the fourth article, which declares that "each law shall contain but one subject, which shall be clearly expressed in its title."

2. *Challenge of juror for cause; when made, or waived.*—In capital felonies, a juror who has been accepted and sworn, whether he be one of the regular pannel or a talesman, cannot, without the consent of the prisoner, be afterwards set aside, nor challenged, for cause existing when he was sworn, although such cause was not discovered until after he had been accepted and sworn; but, in cases of misdemeanors, and felonies not capital, a regular juror may be challenged for cause at any time before he is by some positive act accepted; mere silence as to him while challenging other regular jurors, when they are called together to the box by the order of the court, is not a waiver of the right to challenge him for cause subsequently discovered; and as to talesmen, the right of challenge for cause, discovered after acceptance, though previously existing, may be exercised at any time before the juror is sworn, or at least before the ceremony of administering the oath to him is begun. (Overruling *Stalls v. The State*, 28 Ala. 25.)

3. *Same; what is good cause.*—In any criminal case, whether a felony or misdemeanor, it is a good ground of challenge for cause by the State, that a person will not as a juror convict on circumstantial evidence.

4. *Same.*—On the trial of a person for selling liquor to a man of "known intemperate habits," a juror who served on the trial of another person, charged with selling to the same man, may be challenged for cause on that ground, or set aside by the court, although the statute (Rev. Code, § 4180) does not expressly declare him subject to challenge for cause. (Overruling *Boggs v. The*

[Smith v. The State.]

*State*, 45 Ala. 30, and *Lyman v. The State*, 45 Ala. 72, in which the specified grounds of challenge were held to be exclusive of all others.)

5. *Organization of petit jury; supplying vacancies.*—On the trial of misdemeanors, and felonies not capital, vacancies in the petit jury, caused by the challenge and discharge of regular jurors, may be supplied, at the discretion of the court, either by calling other regular jurors, or by summoning talesmen; and the exercise of this discretion is not revisable on error.

6. *To what witness may testify.*—A witness, well acquainted with the habits of the person to whom liquor was sold by the defendant, may testify that he is a man "*of intemperate habits,*" but not that he is "*of known intemperate habits.*" (Overruling *Stanley & Elliot v. The State,* 26 Ala. 26.)

7. *What constitutes "intemperate habits;" question of fact for jury.*—The frequent use of intoxicating liquors to an excess, producing either drunkenness or any change, mental or physical, from the natural condition of sobriety, constitutes "intemperate habits" within the meaning of the statute (Rev. Code, § 3618); and whether a person is "of intemperate habits," is a question of fact for the determination of the jury.

8. *Selling liquor to person of "known intemperate habits;" constituents of offense; guilty knowledge.*—To authorize a conviction for selling liquor to a person "of known intemperate habits," the jury must be satisfied from the evidence that the defendant had knowledge of such intemperate habits; and they may infer guilty knowledge on his part, from the fact that he had good reason to believe that such were the habits of that person; but this is an inference of fact to be drawn by the jury, and not a presumption of law to be drawn by the court.

9. *Same; charge as to guilty knowledge.*—The notoriety of the intemperate habits of the person to whom the liquor was sold, in the neighborhood in which the defendant resided, is a fact from which the jury may infer knowledge by him of such habits; but a charge which, in effect, instructs them that they are bound to infer knowledge by him from that fact, is an invasion of their province, and therefore erroneous.

FROM the Circuit Court of Choctaw.

Tried before the Hon. LUTHER R. SMITH.

The indictment in this case, which was found in May, 1876, charged that the defendant, Richard B. Smith, " did sell, or give away, to John H. Wilson, a man of known intemperate habits, spirituous, vinous, or malt liquors, without the requisition of a physician for medical purposes." The defendant demurred to the indictment—1st, because it was founded on the act approved March 18, 1875, entitled " An act to render more explicit and to provide for the better enforcement of the provisions of law in reference to the sale or giving away of spirituous, vinous, or malt liquors in this State," " and said title does not express said law ;" 2d, " because said act contains two distinct subjects, the first relating to criminal matters, and the second to civil matters only ;" 3d, " because said act fails to set out or contain the law or laws so explained, revised, or amended ;" 4th, " because said act is a revision, or amendment, of the laws heretofore existing on the subject of selling or giving away spirituous liquors, and fails to contain the law or laws so revised, amended, or explained." The court overruled the demurrer, and the defendant then pleaded not guilty.

[Smith v. The State.]

"On the trial," as the bill of exceptions states, "the following proceedings were had: Jury number one were ordered to take their places in the jury-box, and, the State having challenged two, and the defendant four of said jurors, and four jurors having been called from jury number two, they took their seats in the box. The solicitor then asked the court to allow him to ask a juror a question, and, permission being given, asked one of said jurors, if he would convict upon circumstantial evidence; to which said juror answered, that he would not. The solicitor then asked the court to excuse said juror for cause, and as a person unfit to serve on the jury, and the court excused him; to which action and ruling the defendant objected and excepted. The court then asked the remaining nine jurors, *ex mero motu*, if any of them had been members of the jury which, during the present term of the court, had tried another defendant charged with selling liquor to John H. Wilson, a man of known intemperate habits, to whom the defendant in this case was charged with selling liquor; and four of them having replied that they had served on the jury in said other case, the court thereupon, *ex mero motu*, excused them from serving on the jury in this case; to which action of the court the defendant then and there objected and excepted. There were then left, of the regular jurors, no others except those accepted, or challenged and excused, as above set forth, who had not been members of the jury in said other case; and the court thereupon instructed the sheriff to summon bystanders to complete the jury. The defendant insisted that the jury should be completed from the regular jurors; but the court refused to so order, and the defendant then and there objected and excepted to said action and refusal. The sheriff then summoned four bystanders to complete the jury, two of whom were excused by the defendant, and the court then ordered the sheriff to summon other bystanders to complete the jury; to which the defendant excepted. After the jury was thus completed, and before the talosmen were sworn, the solicitor asked the court to allow him to ask one of the jurors, whether he would convict upon circumstantial evidence; to which the defendant objected, but the court overruled his objection, and allowed the question to be asked; and the juror having replied, that he would not, the solicitor asked that said juror be excused; to which the defendant objected, and excepted to the action and ruling of the court allowing it. The court then ordered the sheriff to fill the place of said juror by summoning one of the bystanders; to which the defendant objected, and reserved an exception."

Several witnesses were introduced on the part of the pros-

ecution, and several by the defendant, who testified as to the intemperate habits of John H. Wilson, the person to whom the liquor was sold, and who was himself examined as a witness on the part of the State. Among these witnesses, A. Abney, a witness for the State and a merchant in the town in which the defendant's place of business was situated, testified, that said Wilson had for several years done most of his business with the house of Abney & Co.; that he had frequently seen Wilson drunk on the streets in said town; that he was a man of "known intemperate habits;" "that he knew some other persons in and around Butler," the town in which the defendant's shop was situated, "who knew the fact of his intemperate habits, but he could not say that the defendant knew it; and that he had never heard said Wilson's character for intemperance discussed." "The defendant thereupon moved the court to exclude from the jury the statement of said witness, 'that said Wilson was a man of known intemperate habits;' and he reserved an exception to the overruling of his motion by the court." Several other exceptions were reserved by the defendant to similar rulings of the court on questions of evidence, which require no particular notice.

The court charged the jury, in writing, as follows: "Before the State can ask a verdict of guilty in this case, the solicitor must show, by satisfactory proof, that the defendant sold or give away spirituous liquors, to a person of known intemperate habits, within twelve months before the finding of this instrument, and that this was done in Choctaw county. When the solicitor has shown this by evidence, he has a right to ask a verdict of guilty, unless the defendant shows some good reason why he should be acquitted. (There are some facts which are admitted: that the witness Wilson bought spirituous liquors from the defendant, in this county, within twelve months before the finding of the indictment; and these facts are not disputed.) The State insists, that said Wilson was a man of known intemperate habits, and that the evidence shows the defendant must have known his character in the community in which he has lived for the past four years; and the defendant denies that said Wilson was a man of known intemperate habits. What are the facts? What is necessary to constitute a man of known intemperate habits? In Webster's Dictionary, intemperate habits are thus defined: '1. In a general sense: want of moderation or due restraint; excess in any kind of action or indulgence. 2. Habitual indulgence in drinking of spirituous liquors, with or without intoxication.' Worcester, another standard authority, says: 'Intemperance is the excessive,

[Smith v. The State.]

immoderate indulgence in intoxicating liquors.' A habit is a tendency, or aptitude, for the performance of certain actions, acquired by custom, or a frequent repetition of the same act. Was said Wilson a man of intemperate habits? Does the evidence show that he frequently indulged immoderately, and to an excess, in drinking intoxicating liquors? If you believe that said Wilson was a man of intemperate habits, and that he bore that character in the community where he lived, and where the defendant lived, was that character known to the defendant, and does the evidence show that he must have known, *or had good reason to believe*, that said Wilson was a man of known intemperate habits, at the time he sold the liquor to said Wilson? If so, the defendant must be convicted. It is for the jury to say, from all the evidence, whether the defendant knew the character of said Wilson; and they may, in connection with the other facts in the case, look to the fact that others in the same community knew his character. The defendant insists, however, that the evidence is not sufficient to convince the jury, beyond a reasonable doubt, that he is guilty as charged in the indictment. What is a reasonable doubt? A doubt, which requires an acquittal, must be actual and substantial; not mere possibility, or speculation. It is that state of the case, which, after the entire consideration and comparison, leaves the minds of the jury in such condition that they cannot say they feel an abiding conviction to a moral certainty of the charge. The defendant insists, that he cannot be rightfully convicted, because he did not intend to violate the law. Ignorance of the law is no excuse; and if the defendant intended to sell the liquor, and knew, *or had good reason to believe*, that said Wilson was a man of known intemperate habits at that time, then he would be guilty, for the law presumes that every sane man intends the natural consequences of his own acts."

The court further charged the jury, at the request of the solicitor, as follows: "While it is not a legal presumption—that is, a presumption of law—it is a presumption of fact, that what is notorious in the neighborhood, is known to the defendant, if he lives in the neighborhood." To this charge, and to those parts of the affirmative charge, above copied, "which define habit, and the definition there given of a person of known intemperate habits," and to the words which are italicized, the defendant excepted; and he then requested several charges in writing, of which the court refused to give the following: 1. "The single habit of getting drunk, even separately, does not constitute intemperate habits." 2. "A person who gets drunk at intervals of several months, or not more than once or twice a year, is not a person of known in-

temperate habits." 3. "The mere fact that a man gets drunk occasionally, in the neighborhood in which the defendant resides, is only a circumstance going to show his knowledge of the fact, but is not conclusive." 4. "A person who gets drunk occasionally, is not a person of known intemperate habits." 5. "If the jury believe, from the evidence, that Wilson's intemperate habits were notorious in the community in which he lives, yet, if such notoriety is not traced directly to the defendant, he is not guilty as charged."

The overruling of the demurrer to the indictment, and the several rulings of the court to which exceptions were reserved on the trial, as above stated, are the matters now presented for revision.

S. H. SPROTT, with GLOVER & TAYLOR, for defendant.

JNO. W. A. SANFORD, Attorney-General, for the State.

BRICKELL, C. J.—1. The only question presented by the demurrer to the indictment is the constitutionality of the act, approved March 18, 1875 (Pamph. Acts 1874-5, p. 280), entitled "An act to render more explicit and to provide for the better enforcement of the provisions of law, in reference to the sale or giving away of spirituous, vinous, or malt liquors in this State." This question was fully considered in *Adler v. State*, at the present term, and the constitutionality of the act affirmed.

2. Indictments for misdemeanors, or for felonies which may not be punished capitally, are triable by the regular jurors summoned for the week, or for the term, if the term does not exceed one week. These jurors are organized by the court, on the day to which they are summoned, into separate pannels, and numbered jury one and two. They are sworn generally; not for the trial of a particular issue, but well and truly to try all issues, and execute all writs of inquiry, which may be submitted to them, and true verdicts to render according to the evidence. When a cause is called for trial, it is in the discretion of the court to cause either pannel to take the box; and the pannel called, on taking their seats, are subject to challenges. If the indictment is for a felony which may be punished capitally, special jurors are summoned, including the regular juries. From the special jurors summoned a jury is drawn and selected. As the name of each person so summoned is drawn, though he may be of the regular juries, he is examined by the court touching his qualifications, and to ascertain if he is subject to challenge for cause. If on such examination he is found of the requisite

qualifications, and not subject to challenge for cause, he is put first on the State, and then on the defendant; and if accepted by each, he is sworn for the trial of the issue in the particular case. After having been accepted and sworn, he cannot, without the consent of the prisoner, be set aside, or challenged, for any cause existing at the time he was sworn, although such cause was not discovered until after he had been accepted and sworn.—*State v. Williams*, 3 Stew. 454; *State v. Morea*, 2 Ala. 275; *Stalls v. State*, 28 Ala. 25; *Mc-Fadden v. Commonwealth*, 23 Penn. 12.

This rule cannot be applied to indictments for misdemeanors, or for felonies not capital, except as to talesmen; because the regular jurors of the week, or term, are not sworn for the trial of the particular case, but generally—for the trial of all issues which may be submitted to them; and the oath is administered before the State or the defendant has the opportunity of interposing a challenge. As to these jurors, the right of challenge for cause exists, until, by some positive act, the juror is selected by the State and the defendant. The mere calling of the juror to the bar, by the order of the court, and the challenge of other jurors called at the same time, without the acceptance or challenge of the particular juror—mere silence in regard to him—the parties not having been required to elect or reject him, is not an absolute waiver of the right to challenge, if good cause be subsequently shown, and it is apparent such cause was not sooner discovered, or was not improperly withheld. Talesmen, when summoned and drawn to supply deficiencies in such juries, are put on the State and the defendant, for acceptance and rejection, as they are drawn, and are not sworn until after their acceptance; or, if the right of peremptory challenge has been exhausted, until an opportunity is afforded for challenge for cause. The challenge of talesmen, for existing cause, must precede the administration of the oath. After the ceremony of the administration of the oath is commenced, the right of challenge for existing cause is lost, alike to the State and to the defendant.

In *Stalls v. State* (25 Ala. 25), it was held, that the State lost the right of challenge for cause, if the talesman had been accepted, though the cause of challenge was discovered after acceptance, and interposed before he was sworn. We are not inclined to follow this ruling. If the court is satisfied that the cause of challenge was discovered after the acceptance of the juror, and before he is sworn—that it has not been withheld from mere caprice, or from some improper motive, the challenge should not be disallowed. The right of the State, and of the defendant, is to a fair trial, by an

honest, impartial, intelligent jury. The defendant does not acquire a right, by the acceptance of a juror who is subject to challenge for cause, to be tried by him. The State does not lose the right to interpose the challenge, so long as the juror is not sworn. Until then, the matter of his selection and qualification is not complete. It is the administration of the oath which qualifies him, and frees him from challenge for cause, by the State, or by the defendant. It does not distinctly appear from the bill of exceptions that the State, or the defendant, when the court allowed the first challenge for cause, had passed upon and accepted the jurors challenged. In reference to the jurors subsequently challenged, it does not appear whether they were of the regular jury, or of the talesmen. If they were of the talesmen, the challenge was not too late. If of the regular jurors, whether the challenge was in time, depends upon whether the State and the defendant had previously elected them by any positive act.

3. The statute declares that, on trials for offenses which may be punished capitally, or by imprisonment in the penitentiary, it is ground of challenge for cause by the State, that a juror is of the opinion a conviction should not be had on circumstantial evidence.—R. C. § 4182. The purpose of this, and of all the statutes in reference to juries and jurors, is to secure to the State, and to the accused, a trial by an honest, impartial, intelligent jury of resident citizens. The enumeration of particular grounds of challenge was not intended to exclude others, which affect the integrity, or the indifference, or the intelligence of the juror, and which, if disallowed, would disappoint the objects of a trial by jury.— *State v. Marshall*, 8 Ala. 302. The law commands a conviction for a misdemeanor, or a felony, on circumstantial evidence, if the circumstances are so strong and conclusive as to exclude any other reasonable hypothesis than that of the guilt of the accused. If would be singular, if such evidence was to be addressed to a juror, whose opinions were formed and fixed against its sufficiency, before its introduction, and before he was instructed as to the legal rules by which its sufficiency was to be tested. There are misdemeanors, in which knowledge of a particular fact is an indispensable element of the offense. The proof of knowledge, in such cases, is most often dependent on circumstantial evidence. The knowledge is to be inferred from facts, or circumstances, which may be proved. In the present case, the State was bound to prove that the person to whom the defendant had sold or given spirituous liquor was of intemperate habits, and that the defendant *knew it*. There was not, and but sel-

dom can there be, direct proof of such knowledge. The frequency and publicity of his intoxication, in the immediate vicinity of the defendant's residence and place of business, and the knowledge of his habits in the community, and by those not more intimate in intercourse with him than the defendant, were circumstances from which the jury were authorized to infer that the defendant had knowledge of such habits. The administration of justice would merit, and soon sink into contempt, if a juror was called as the final trier of the evidence, who, however honestly, had formed an opinion upon, and prejudged its sufficiency. It is good ground of challenge for cause by the State, in any case, whether of felony or misdemeanor, that the juror holds to such an opinion of the law, that he cannot, or will not, convict on circumstantial evidence, however strong it may be.—1 Bish. Cr. Pr. § 916.

4. The law, common and statutory, is careful to exclude from the jury-box a juror who has, in any degree, prejudged the issue he is to try; or who is under any bias, or want of impartiality, which would prevent him from hearing, trying, and determining fairly. The juror who has a fixed opinion as to the guilt or innocence of the accused, which would bias his verdict, is excluded by statute. The grand juror, who has indicted the accused, is excluded by the common law, though he hears only the evidence for the State.—*Birdsong v. State*, 47 Ala. 68. Or, if there has been a mistrial, no member of the jury failing to agree is competent as a juror on the second trial.—1 Bishop's Cr. Pr. § 913. There seems to have been a trial of another defendant, for an offense identical with the offense charged in the present indictment— *the giving or selling spirituous liquor to John H. Wilson, a man of known intemperate habits.* The gist of the offense, in each indictment, was the character of the person to whom the liquor was sold or given, and the knowledge by the defendant of such character. The controverted facts, on the trial of the present indictment, were, the character of Wilson's habits, and the defendant's knowledge of that character. The fact of sale of the liquor was clearly shown, and there was no conflict of evidence on that point. If the controversy, on the former trial, was confined to these facts, it is apparent the jurors on that trial were not impartial. They had formed and expressed an opinion, which, of necessity, would bias their verdict. The issues in the two causes, and the evidence to prove or disprove them, are so identical that we think the court was justified in assuming the jurors on the first trial were disqualified. If a juror had announced to the court, that he had formed and expressed an opinion

that Wilson was, or was not, of intemperate habits, it would have been the duty of the court, at any time before he was sworn, or before he was accepted by the defendant and the State, if it was not necessary to swear him in the particular case, without waiting a challenge for cause, to exclude him from the jury. The impartiality of the jury-box, the purity of the administration of justice, would require it. Upon Wilson's habits, the jurors excluded had passed; and having passed upon them, they had already adjudged one of the most material issues, or facts in issue, involved in the trial of the present indictment. They were as incompetent as if they had been jurors on a former mistrial.—1 Bish. Cr. Pr. §§ 912-13.

The cases of *Boggs v. State* (45 Ala. 30), and *Lyman v. State* (Ib. 72), are in conflict with the views we have expressed, and are in conflict with the case of *State v. Marshall*, 8 Ala. 302. The error of the decision, in these cases, lies in the supposition, that there are no causes for the exclusion of jurors, except such as are enumerated as challenges for cause in the statute. The incorrectness of that supposition is shown in the subsequent case of *Birdsong v. State* (47 Ala. 68), in which it was held, that a grand juror was not a competent petit juror, on the trial of an indictment found by the jury of which he was a member. The true rule, we think, is that expressed in *State v. Marshall*. And we cannot doubt it is the duty of the court, when it shall appear satisfactorily that any person called as a juror has not the requisite qualifications of integrity, impartiality, or intelligence, at any time before he has been elected by the State and the defendant, to reject him. The State certainly has no interest, and the defendant has no right, to introduce into the jury-box unfit persons. It is the duty of the court to guard against their introduction.

5. When, on a trial for a misdemeanor, or a felony which may not be punished capitally, vacancies in a petit jury are caused by challenges, or by the rejection or discharge of jurors by the court, it is within the discretion of the court to direct such vacancies to be supplied, either by calling jurors from the regular pannels in attendance, or by summoning talesmen from the bystanders, or from the county at large.— R. C. §§ 4090-91; *Wilson v. State*, 31 Ala. 371.

6. In *Stanley & Elliott v. State* (26 Ala. 26), it was held competent for a witness to state that a person was of *known intemperate habits*. The general rule is, that the opinions of a witness, as to the existence of a fact, or his inferences or conclusions from facts, are not evidence. In the case referred to, the court say: "The question as to the intemper-

ate habits is purely one of fact; and it can make no difference in principle, that being the case, that the matter in relation to which the witness is required to speak is made up of more than one fact." The only authority cited by the court is *Massey v. Walker* (10 Ala. 288), in which it was held that " a witness was properly permitted to testify that another, at a particular time, was 'largely embarrassed by debt.' " · If a witness should testify to such a state of facts as clearly and satisfactorily proves that his acquaintance with·a particular person was of such character that he must know his habits, and must know whether he was given to the immoderate use of intoxicating liquors; if he should show, by the facts stated, these habits, as they fell within his observation, it may be proper to permit him to state, in connection with the facts, that the person was of *intemperate habits;* as it would be proper for him, after having stated his opportunities or ability to testify in reference to the particular fact, to state that the same person was *sane* or *insane.*—*Norris v. State,* 16 Ala. 776; *Florey v. Florey,* 24 Ala. 241; *Powell v. State,* 25 Ala. 21; *Stuckey v. Bellah,* 41 Ala. 700. But it cannot be permissible for him to state that these facts were *known.* · Then he testifies to the inference which the jury must draw from all the evidence—he is.substituted to their place, and the conclusion, which is the result of the exercise of their judgment on all the evidence, would be reduced to a fact which the witness would prove. We cannot concur in the opinion expressed in *Stanley & Elliott v. State, supra.*

7. The use of intoxicating liquors to drunkenness, or to an obvious change, mentally or physically, or both, from the natural condition of sobriety, is an acquired habit. The frequent repetition of the use, producing the change, renders the man of *intemperate habits.* When the facts are before the jury, they will not fail to determine whether the habit is, or is not, imputable to the particular person. The fact is determinable, as the fact of habit would be determinable in reference to any other matter. Is there a frequent repetition of the immoderate use of intoxicating liquors? If the opportunity is present, will there be, judging from past conduct, a repetition of such excessive use? If so, and there is knowledge of the past conduct, the law commands all to abstain from selling or giving to him vinous, spirituous, or malt liquors.

8. It may be that Wilson was " of intemperate habits;" but, if these habits were unknown to the defendant, the offense with which he is charged was not committed. If the defendant had good reason to believe that such were Wilson's habits, the existence of the reason is a fact, or circum-

stance, from which the jury may infer the guilty knowledge. The inference, or presumption, to be drawn from the fact, lies within the province of the jury—it is not a presumption of law.—1 Green. Ev. § 44. There are many cases in which knowledge of the particular facts is essential; as on an indictment for uttering a forged instrument, knowledge of its false character on the part of the utterer must be shown. That he had good reason to believe such was its character, is a fact or circumstance which may be shown to the jury in proof of knowledge, but it is not conclusive—it is simply a fact, on which the jury may found the presumption of knowledge. So, on an accusation of receiving stolen goods, circumstances may be shown which may lead to the conclusion that the defendant had good reason to believe the goods were stolen. These circumstances are admissible in evidence, and on them the jury may found the presumption of guilty knowledge. Whether the presumption shall be drawn from them, lies within the province of the jury. In instructing the jury that the defendant was guilty, if he had good reason to believe Wilson was of intemperate habits, the court invaded the province of the jury. It was assuming that the presumption from the fact was matter of law, and not of fact, to be drawn by the jury.

9.  In *Stallings v. State*, 33 Ala. 425, overruling *Stanley & Elliott v. State*, 26 Ala. 26, it was held that the notoriety of the intemperate habits of the person to whom the liquor was sold, in the neighborhood in which the defendant resided, is a fact proper to be submitted to the jury, for their consideration in determining whether the defendant had knowledge of such habits. If, from the fact of notoriety, the jury should draw the inference of knowledge, it would be an inference of fact. Whether the inference is just and legitimate, it is the province of the jury to determine. The charge given at the instance of the solicitor is so expressed that the jury were probably, we may say certainly, impressed with the conviction that they were bound to infer the guilty knowledge from the fact of notoriety; and thus invaded their province. Whether the inference of knowledge should be drawn, depends on the degree of notoriety, the opportunity of the defendant to acquire knowledge of it, and his opportunities to observe or to be informed of the habits of the person. The jury must be left free to pronounce, from all the evidence, whether they are satisfied the defendant had the knowledge which renders his act criminal.

For the errors noticed, the judgment must be reversed, and the cause remanded. The defendant will remain in custody, until discharged by due course of law.