# State, *ex rel.* Attorney General *v.* Latham, Sheriff.

## *Impeachment Proceedings.*

(Decided June 24, 1910.  61 South. 351.)

1. *Sheriffs and Constables; Impeachment; Grounds; Constitutional Provision.*—The provisions of section 173, Constitution 1901, made applicable to the office of sheriff by section 174 thereof, are intended to apply to a condition less grave than that of habitual drunkenness; implying rather that he must by the use of intoxicants, drugs, etc., have brought about a condition, physical, mental or moral, which unfits him in view of the dignity and importance of his office for the discharge of such duties.

2. *Same.*—Such a condition as unfits an officer for the discharge of his duties may be brought about by the use of alcoholic drinks, drugs or narcotics, to such an extent as to degrade his moral and mental faculties, though he may have never been in a condition which is commonly called drunk; and on the other hand, an occasional lapse, while reprehensible, may not reach the degree of obliquity aimed at by section 173, Constitution 1901.

3. *Words and Phrases; Intemperance; Intemperate Habits.*—Intemperance may be defined to be the use of anything beyond moderation, and intemperate habits, any immoderate or excessive use of intoxicants, or other deleterious drugs.

4. *Sheriffs and Constables; Impeachment; Grounds.*—Within the meaning of section 173, Constitution 1901, intemperate habits cannot be predicated of an officer who occasionally drinks to excess, yet it is not necessary to show that he is drunk every day. If sobriety is the rule and intoxication the exception, he is not within the statute; but if the habit is to drink to intoxication when occasion offered, and abstinence is the exception, then the charge of intemperate habits is sustained, as the Constitution does not deal with the habits as such, but rather with the effects of the use on the officer.

5. *Same.*—The provision being highly penal in its nature, requires that the court, in order to convict be convinced of the officer's guilt beyond a reasonable doubt.

6. *Same; Evidence.*—The evidence considered, and it is held that under it the state has failed to make out its case in view of the principles declared in the opinion.

Original proceedings in the Supreme Court.

The State of Alabama on the relation of its Attorney General, files impeachment proceedings against Edgar E. Latham, sheriff of Tuscaloosa County, basing the

same upon the report of the grand jury of said county recommending impeachment.    Defendant discharged.

The specifications were, first, willful neglect of the duties of his office for and on account of his habitual drunkenness and intemperance in the use of intoxicating liquors to such an extent, in view of the dignity of the office and the importance of his duties, as unfits him as such sheriff for the discharge of such duties; second, for and on account of his habitual drunkenness and intemperance in the use of intoxicating liquors to such extent, in view of the dignity of the office and importance of its duties, as unfits him as such sheriff for the discharge of such duties; third, intemperance in the use of intoxicating liquors to such an extent, in view of the dignity of the office and the importance of its duties, as unfits him as such sheriff.    These charges were based upon the report of the grand jury of Tuscaloosa county, finding that he was unfit for the office, and requesting his impeachment.

ALEXANDER M. GARBER, Attorney General, THOMAS W. MARTIN, Assistant Attorney General, and C. B. VERNER, for the State. The argument was oral and no brief reached the Reporter.

H. A. JONES, and JONES, FOSTER & FIELDS, for appellee. The argument was oral, and no brief reached the Reporter.

SIMPSON, J.—In accordance with the recommendation of the grand jury of Tuscaloosa county, the Attorney General, in the name of the state of Alabama, presents articles praying the impeachment of the defendant, which will be copied in the statement of this case by the reporter. The first and second charges were

[State, ex rel. Attorney General v. Latham, Sheriff.]

abandoned by the state, and the trial was had on the third charge as set out.

The only question necessary to consider is whether the defendant should be impeached for a violation of section 173 of the Constitution, which is made applicable to sheriffs by section 174.

It is not claimed that the defendant has been guilty of "willful neglect of duty, corruption in office, or incompetency," or that he has been guilty of "an offense involving moral turpitude"; but it is claimed that he is subject to impeachment on account of the remaining words of said section 173, to wit, intemperance in the use of intoxicating liquors or narcotics to such an extent, in view of the dignity of the office, and importance of its duties, as unfits the officer for the discharge of such duties." These words, in our present Constitution, are substituted for the words "habitual drunkenness" in section 1 of article 7 of the Constitution of 1875.

It is evident that the framers of our present Constitution intended to describe a condition less grave than that of habitual intoxication. It is evident from the wording of the section that it does not mean that an officer, who, upon one occasion, has been so intemperate in the use of intoxicants or narcotics as to unfit him, at that time, for discharging the duties of the office, shall be impeached. While *habitual* drunkenness, or *habitual* intemperance, to the extent used, is not indicated, yet the wording of the Constitution does indicate that the officer must have used, or is using, the drugs so intemperately that he has brought about a condition, physical, mental, or moral, which, "in view of the dignity of the office, and importance of its duties," unfits him for the discharge of the duties of his office.

The framers of the Constitution also evidently meant something by the use of the words "in view of the dig-

nity," etc.; so that, although a sheriff may have been wise enough to select competent deputies, who properly keep the books and execute process, etc., yet, if he has so intemperately used said drugs as to bring himself into that condition which brings into disrepute the administration of the high office which he holds, or presents before the people a man so debauched by the drugs or liquors as to be unfit to discharge the duties, or as to render him liable, when any emergency happens, to fail to rise to the dignified discharge of the duties of his office, he should be impeached.

The state demands of an officer the unimpaired use of his mental and moral faculties for the discharge of the duties of his office; and a man may so use alcoholic drinks, and particularly narcotics, as to degrade his mental and moral faculties and unfit him for the discharge of his duties, though he has never been what is commonly called "drunk." On the other hand, an occasional lapse, while it is reprehensible, does not reach the degree of obliquity aimed at by the Constitution.

Intemperance had been defined to be "the use of anything beyond moderation"; and "intemperate habits" is defined as "any immoderate or excessive use of intoxicating liquors."—4 Words and Phrases, 3863, 3684.

It is also said that, "while intemperate habits, within the meaning of the statute, cannot be predicated of a person who occasionally drinks to excess, neither is it necessary to show that he is drunk every day. If sobriety is the rule, and occasional intoxication the exception, he is not within the statute. And, on the other hand, if the habit is to drink to intoxication when occasion offers, and sobriety or abstinence is the exception, as when one is accustomed to remain sober while at home, but generally drinks to excess when in company, or when visiting the town or village, the charge of in-

temperate habits is sustained."—Black on Intoxicating Liquors, § 425; *Tatum v. State,* 63 Ala. 147, 152.

This court has also said: "The use of intoxicating liquors to drunkenness, or to an obvious change, mentally or physically, or both, from the natural condition of sobriety, is an acquired habit. The frequent repetition of the use, producing the change, renders the man of intemperate habits."—*Smith v. State,* 55 Ala. 1, 11.

It will be noticed that our Constitution does not deal with the habits, as such, but with the effects of the use on the officer; yet these definitions, to some extent, furnish criteria by which to arrive at a conclusion as to whether the intemperate use has so operated on the officer as to render him unfit.

The word "unfit" does not necessarily mean incompetent. Fitness has been defined as "the quality or state of being fit, suitable, and adapted to the performance of duties" (3 Words and Phrases, 2828) ; and, as we have indicated, a man may be unfit, by reason of the moral character which he has established, to discharge the duties of an important and dignified office, although he cannot be said to be incompetent.

The law upon this subject being highly penal in its nature, this court is required to be convinced by the evidence, beyond a reasonable doubt, of the guilt of the accused, in order to a conviction.

Bearing in mind the principles herein stated, and after a careful consideration of all of the evidence, the court is of the opinion that the state has failed to make out its case; and the defendant is acquitted and discharged.

The entire court concur.