# State, *ex rel.* Attorney General *v.* Pratt, Judge.

*Impeachment.*

(Decided April 3, 1915. · 68 South. 255.)

1. *Officers; Impeachment; Intemperance.*—Where an officer of the kind enumerated in §§ 173-5, Constitution 1901, is an habitual drunkard, he is subject to removal by impeachment under the provisions of § 173.

2. *Same.*—As used in § 173, Constitution 1901, the term "intemperance" means such intemperate use of intoxicants or narcotics, in view of the dignity of the office and of the nature and importance of its duties as unfits the officer for the discharge of such duties,

·and hence, must vary with the grade of the office and the nature
:and importance of its duties.

3. *Judges; Removal; Ground.*—Proof that a judge of probate has
been for many years an habitual drinker of alcoholic liquors dur-
ing his incumbancy of the office, that such indulgence has injur-
iously affected his mental and moral faculties and normal sensibili-
ties, that his personal conduct evidenced a well-nigh reckless disre-
.gard of or indifference to his own welfare, and the dignity of his
position, authorizes his removal from office under § 173, Constitu-
:tion 1901.

(Mayfield and Sayre, JJ. dissent.)

ORIGINAL petition in the Supreme Court.

Proceedings by the State on the relation of W. L.
Martin, Attorney General, against W. L. Pratt, as judge
·of probate of the county of Bibb, to impeach and re-
move respondent from office because of habitual drunk-
enness. Order entered removing respondent from of-
.fice.

W. L. MARTIN, Attorney General, W. H. MITCHELL,
Assistant Attorney General, and J. F. THOMPSON, for
petitioner.

HILL, HILL, WHITING & STERN, W. H. COOPER, J. T.
FULLER, and J. F. ELLISON, for respondent.

· Justice McCLELLAN delivered the opinion of the
court: The respondent, W. L. Pratt, is the judge of
probate of the county of Bibb. Pursuant to the recom-
mendation of the grand jury of that county, presented
under and in virtue of Code, § 7124, 7125, the respond-
ent's impeachment is sought by the state of Alabama,
on the relation of its Attorney General.

(1) The single charge preferred against the officer is
grounded in this provision of section 173 of the Consti-
tution of 1901: "Intemperance in the use of intoxicat-
ing liquors or narcotics to such an extent, in view of
the dignity of the office, and the importance of its du-

ties, as unfits the officer for the discharge of such duties."

The quoted provision of the organic law was the expression of a particular intent to establish a different grade of intemperance, for the purpose of authorizing and requiring the impeachment of officers, to that of habitual drunkenness, as prescribed in the Constitution of 1875.—*Latham's Case,* 174 Ala. 281, 61 South. 351. It appears from the minority report of the committee on impeachment of the constitutional convention of 1901 (Journal, pp. 708-711) that the majority report of the committee recommending the adoption of what is now section 173 of the Constitution intended by the quoted provision thereof to remedy the condition made by the decision of this court in *State v. Robinson,* 111 Ala. 482, 20 South. 30, interpreting and applying the provision of the Constitution of 1875 wherein habitual drunkenness was constituted a ground of impeachment. Since the departure wrought by the stated change thus made in the present Constitution eliminates habitual drunkenness as the essential degree of intemperance requisite to impeach an officer, it is no longer specially important to consider the subject with reference thereto, except to say that, of course, if an officer of the kinds enumerated in sections 173 to 175 of the present Constitution, is shown to be an habitual drunkard, he is within the quoted provision of section 173, and is due to be removed from office.

(2) In the *Latham Case,* cited above, this court entered upon the interpretation of the quoted provision of the organic law; and the following propositions were therein established by the unanimous judgment of this court as then constituted: (a) That a less degree of intemperance in the use of intoxicants or of narcotics by an officer will now require the removal of the of-

fending officer than was requisite when habitual drunkenness was the prerequisite to removal because of intemperance; (b) that an occasional lapse into intoxication, however reprehensible it may be, "does not reach the degree of obliquity aimed at by the Constitution;" (c) that an officer's intemperance may be such as to render him removable therefor, even though he has never been what is commonly called "drunk;" (d) that, within the contemplation and effect of the quoted provision of the Constitution, an officer may deserve removal from his office even though it cannot be said he is incompetent to perform its duties, and that "unfitness," within the purview of that provision, is not synonymous with "incompetency" to discharge the duties of the office (see *Lowe's Case,* defining "incompetency," as set out in *Martin's Case,* 180 Ala. 467, 468, 61 South. 491); (e) that the unfitness contemplated by the quoted provision of the Constitution may be manifested, and may occur by reason of an intemperance of the officer whereby he, through himself, brings "into disrepute the administration of the high office which he holds, or presents before the people a man so debauched by the [use of] drugs or liquors as to be unfit to discharge the duties, or as to render him liable, * * * to fail to rise to the dignified discharge of the duties of his office;" (f) and, according to the quoted provision of the Constitution, that the intemperate use of intoxicants or narcotics by an officer may render him unfit for the discharge of the duties of his office if thereby his mental or moral faculties have become degraded.

The quoted provision of the Constitution graduates the degree of intemperate use of intoxicants and narcotics, requiring removal from office, according to the dignity of the office and the nature and importance of its duties. This is manifest from the language of the

provision. In no event does it authorize removal of an officer whose intemperance has not rendered him unfit for the discharge of his duties, as the want of fitness has been stated on the authority of *Latham's Case*, as reaffirmed herein above. Intemperance of the officer, as that affects his fitness to perform the duties of the particular office, is the basic idea in the provision; and it is against intemperance, in that relation and with the defined effect, that the Constitution directs and must be given its force. Neither an abstract definition of "intemperance" nor of "capability" to discharge the duties of the particular office can be fully, unrestrictedly availed of in the interpretation or in the practical administration of this provision of the organic law; for the expression is of a composite idea, and the method and means of that expression effect to qualify and to interrelate the terms constituting the provision. The intemperance contemplated as being essential to the authority to remove an officer is made by the provision to depend in character and in degree (not below unfitness for the discharge of the duties of the office under inquisition) upon the dignity of the office and the nature and the importance of its duties. It is hence established by the provision that the intemperance requisite to removal must vary with the grade of the office and the nature and the importance of its duties; and, in necessary consequence, the degree of intemperance which will authorize removal decreases as the dignity of the office and the nature and the importance of its duties are elevated and stand in the scale of rank in official service; but the decrease of the degree of intemperance, in inverse order to the elevation of the dignity of the office and of the nature and the importance of its duties, cannot descend below the point where the intemperance indulged does not render the officer un-

fit for the discharge of the duties of his office. "Intemperance," as employed in this provision of the Constitution, means, as the provision, in substance, says, such immoderation in the use of intoxicants or narcotics, in view of the dignity of the office and of the nature and the importance of its duties, as unfits the officer for the discharge of its duties.

(3) As stated, the officer here on trial is a judge of probate. In the *Latham Case* the respondent was a sheriff, the highest purely executive officer of a county. Under our laws the office of judge of probate is the most exalted of county offices. Its functions and duties are important in a very high sense. These functions and duties are multiform and manifold. Among them are those of a strictly judicial nature; those of an executive nature; and those of a legislative nature. Some of these duties and functions may appropriately be stated: The judge of probate has jurisdiction in his county of matters of administration of estates of decedents and of orphans, and of those under disabilities; of the trial of certain grades of criminal offenses; of the trial of contests of wills; proceedings with respect to the establishment of public roads; and of proceedings having in view the creation of stock-law districts. The judge of probate has duties with respect to the holding of various kinds of elections, and, in some instances, the hearing of contests thereof. He is generally, as in this instance, a member of, and presides over, the county governing body. This body has large and important functions and duties, particularly with reference to the fiscal affairs of the county. He is the issuer of warrants of the county to discharge the county's properly audited or existing obligations. The county governing body also usually determines the disposition to be made of county convicts, and the contracts under which such

convicts are let or are employed. That body also usually has under its care the construction, repair, and maintenance of the public roads, and the supervision, care, and repair of the public property of the county. The judge of probate is the custodian of the registration books of the county, and his duty is to see that the registration of instruments that may be recorded are recorded. He is the officer authorized to issue various kinds of licenses, and to collect and to remit to the proper officer license fees. He is the distributor of warrants for pensions, awarded to those entitled thereto. He is obliged to perform vitally important duties with respect to the system for the assessment of taxes and for the collection thereof in certain cases of delinquency where sales of property are decreed by him; and, in addition, he has further duties in respect of the redemption and of the purchase of lands sold for taxes. He is also a conservator of the peace. He is the custodian of the jury box. Other of the duties and functions of a judge of probate might be enumerated. Those indicated will readily suffice to disclose the high dignity and the great importance and the serious nature of the duties of the office. Such powers, duties, and functions as are attached to the office by law necessarily reflect upon an incumbent thereof a dignity and an honor and an importance, generally noted and entertained, that deserves to be, and must be, maintained and sustained by the incumbent in order that the trust to which he is related and which is committed to him may be justified, and not degraded or impaired.

It has been conclusively proven, if, indeed, not really conceded by the respondent, that Judge Pratt has been for many years, during his incumbency of this office, which began in the year 1898, a very constant alcoholic drinker. The evidence leaves no doubt that this

[State, ex rel. Attorney General v. Pratt, Judge.]

character of continued indulgence has had its effect upon the respondent's mental and moral faculties and more normal sensibilities. According to the evidence, his personal conduct, even in recent months, evincing a well-nigh reckless disregard of, or indifference to, his own welfare and the dignity of his position in the community, and of the most obvious proprieties, confirms the conclusion that the respondent's long-continued use of intoxicants has had a profound and unfortunate effect upon him. Under this condition of established fact in respect of the personal habits and conduct of the man, the only remaining inquiry, under the issues made by the charge against the officer, is whether the respondent's intemperance is of the degree defined in the Constitution, entailing the effect to unfit him for the discharge of the duties of the office.

One hundred and fourteen witnesses have testified before the court on the issues stated. A detailed discussion of the evidence is as unnecessary as it is undesirable. It has been carefully considered. The opinion prevails, and that without any reasonable doubt, that the respondent is so intemperate in the use of intoxicants, in view of the dignity of the office of judge of probate and of the nature and importance of its duties, as to unfit him for the discharge thereof. The charge is sustained, and the respondent must, under the Constitution's mandate, be removed from the office of judge of probate.

ANDERSON, C. J., and SOMERVILLE, GARDNER, and THOMAS, JJ., concur.

SAYRE, J.—(Dissenting.)—I am not disposed to raise any question about the statement of the law to be found in the majority opinion. It suffices for my

purpose to repeat the language of the Constitution, which is not of difficult comprehension. That instrument says: That a judge of the probate court 'may be removed from office for willful neglect of duty, corruption in office, incompetency, or intemperance in the use of intoxicating liquors or narcotics to such an extent, in view of the dignity of the office and importance of its duties, as unfits the officer for the discharge of such duties, or for any offense involving moral turpitude while in office, or committed under color thereof, or connected therewith.''

The sole charge brought against defendant, by the information and the evidence in support of it, is that he has been guilty of intemperance in the use of intoxicating liquors to such an extent, in view of the dignity of his office and the importance of its duties, as unfits him for the discharge of its duties; and the question of fact involved is whether the evidence shows beyond a reasonable doubt that he has been guilty as charged.

We know nothing of Judge Pratt or the manner in which he has discharged the duties of his office, except as we have learned these things from the testimony taken on the trial. A large majority of the witnesses, a numerous, substantial, and honest-looking body of his neighbors, men who have on frequent occasions had official business with him, have testified to facts which show to my entire satisfaction that during the 17 years of his incumbency in the office of probate judge the actual duties of that office, manifold and important as they are, have been discharged by defendant with dignity and a high—I believe I may safely saw with an uncommon—degree of intelligence, faithfulness, and efficiency. Quite a number of the witnesses have laid peculiar stress upon the considerate care defendant has given to the business of widows and orphans in his

[State, ex rel. Attorney General v. Pratt, Judge.]

court. As I recall the testimony, only three or four of the cloud of witnesses who testified on either side found any fault with his actual discharge of any of the duties of the office. Two of these, lawyers, who had been disappointed in the result of their cases, gave their opinion that defendant's rulings on a certain occasion in the county court were improper and absurd; but, so far as I could see upon the whole evidence touching that particular occasion, the judge had good and substantial reasons for the rulings of which these witnesses complained. Two or three others testified to some alleged derelictions which could only be magnified into importance by the narrow and partisan judgment of witnesses harboring petty grievances. Notwithstanding what these few out of more than a hundred witnesses have testified, it is, in my judgment, established by the overwhelming weight of the evidence that defendant has, in fact, and down to the day of his trial, discharged the duties of his office with a becoming degree of dignity, intelligently, faithfully, and efficiently. How, then, is he unfit within the meaning of the Constitution?

It is conceded that an officer may by his conduct, apart from the duties of his office, render himself morally unfit. It is also conceded that the evidence in this case goes to show that defendant is an habitual drinker, and has been ever since, and perhaps before, he was put into office, but not habitually to excess. The answer to the accusing force of this habit is the fact that he has nevertheless discharged the duties of his office in the manner stated above. And that fact, in my judgment, goes far towards establishing defendant's moral fitness. However, on some 10 or 12 occasions defendant has been obviously intoxicated to a degree that impaired his mental and physical faculties. Proof of these

instances has been the outcome of an investigation that some motive has spurred to extraordinary diligence, and which seems to have followed every detail of defendant's life at home and abroad for the last seven years. About half of them appear to have occurred while defendant was on visits to Montgomery and Tuscaloosa. Some of them seem to have found occasion in the anger and irritation caused by the preparation of this prosecution, which has been on foot for some time, and which defendant has unwisely, and, I think, unfortunately for himself, met with stubborn resentment, rather than with prudent policy. Charity of opinion as to these lapses from propriety and dignity need not be unstrained; there is no wholly sufficient excuse for any of them; they are reprehensible, and appear particularly so when brought in mass under critical judgment and without due regard to the time over which they have been spread. It is clear upon the whole evidence that defendant has not the habit of intoxication.— *State v. Latham;* 173 Ala. 281, 61 South. 351. It is clear to my mind also that defendant has not undergone any profound change of mental or moral constitution. I am of the opinion that he is as well fit for the office as he ever was. Considering, then, his fine record in the actual performance of the duties of his office the detached nature of his indiscretions which have been scattered over a number of years, and that occasional lapses, however reprehensible, do not reach the degree of obliquity aimed at by the Constitution, as this court has said (*State v. Latham, supra*), I have not been able to reach an abiding conviction that defendant's mental or moral character has been so impaired or degraded by intoxication as to render him unfit for the official duties which have been repeatedly committed to him by his fellow citizens of Bibb county and on these considera-

tions have felt constrained to differ from the majority of the court, and to vote for an acquittal, as I believe the whole court did in a case very much like this (*State v. Latham, supra.*)

I am authorized to say that Judge MAYFIELD concurs in these views.