No. 46,015

In the Interest of STARLETTE ARMENTROUT, a Minor Child Under the Age of Sixteen Years (JOHN M. NAIL, Petitioner, and JAMES T. MYERS, Guardian *ad litem, Appellees,* v. KAREN G. ARMENTROUT JONES, *Appellant.*)

(485 P. 2d 183)

Opinion filed May 15, 1971.

*James A. Williams,* of Dodge City, argued the cause and was on the brief for the appellant.

*James T. Myers* [guardian *ad litem*], of Dodge City, and *John E. Fierro* [substituted for David L. Patton] County Attorney, both argued the cause and were on the brief for the appellees.

The opinion of the court was delivered by

KAUL, J.: This case originated in the juvenile court of Ford County pursuant to the provisions of the Juvenile Code (K. S. A. 38-802, *et seq.,* [now 1970 Supp.]).

The parental rights of Karen G. Armentrout Jones, the natural mother of Starlette Armentrout, were severed and Starlette was made a ward of the Ford County Social Welfare Department by the juvenile court. An appeal by Mrs. Jones and a trial *de novo* in the district court resulted in a similar judgment. Thereafter Mrs. Jones perfected this appeal.

The controlling question is whether there is sufficient evidence to support the district court's finding that Mrs. Jones was "unfit" as that term is used in K. S. A. 1969 Supp. 38-824 (*c*) [amended, now K. S. A. 1970 Supp.].

On April 19, 1968, a juvenile officer filed a petition alleging that Starlette Armentrout (hereafter referred to as Starlette) was in the hospital in Greensburg and, although in need of further hospitalization, her parents were threatening to remove her from the hospital against the orders of the child's physician. The petition prayed for an immediate emergency order making Starlette a ward of the juvenile court. An order was entered on the same date and the juvenile court placed Starlette in the temporary custody of the Ford County Social Welfare Department, until further order of the court.

Starlette was hospitalized as a result of the deplorable events recited in *State v. Jones,* 204 Kan. 719, 466 P. 2d 283.

On May 1, 1968, John M. Nail, a juvenile officer, filed a second petition initiating the present action which is here on appeal.

In his petition Officer Nail alleged that Starlette was a child under sixteen years of age; that her parents were Gene and Karen Jones, of Garden City; that she was a dependent and neglected child by reason of one or more of the grounds enumerated in 38-802 (*g*), supra, and prayed that Starlette be declared a dependent and neglected child; that the court exercise the parental power of the state relative to her; that the rights of the natural parents be severed; and that the child be made a ward of the Ford County Social Welfare Department with the right to consent to adoption.

Statutory notice was given to all necessary parties. James A. Williams, a member of the Ford County Bar, was appointed to represent Karen Jones (hereafter referred to as appellant or Karen). Mr. Williams filed an answer for Karen, denying the allegations of the petition and praying that the petition be denied; that the temporary custody order be dissolved; and that the physical custody be restored to Karen, the natural mother of Starlette.

James T. Myers, a member of the Ford County Bar, was appointed guardian *ad litem* and filed a general denial on Starlette's behalf.

No further proceedings were had in this action until after the trial of Gene Jones, the stepfather of Starlette. Jones was charged with the statutory rape of Starlette. He was convicted by a jury. On October 25, 1968, Jones was sentenced to a term of not less than one nor more than twenty-one years in the Kansas State Penitentiary. (See *State v. Jones,* supra.)

In the meantime, appellant left her residence in Bucklin and moved to Garden City where she resided until December 1968, when she moved to Tipton, Oklahoma, and established a residence that continued throughout these proceedings.

The matter was heard in the Ford County juvenile court on May 27, 1969. Appellant returned from Oklahoma to attend the hearing and brought several witnesses to testify in her behalf. Petitioner Nail and several social workers from Ford and Finney Counties testified in support of the petition. The juvenile court found for petitioner on all points. Thereafter appellant appealed to the district court. The guardian *ad litem* filed an answer in district court wherein he stated that he concurred with the findings of the juvenile court.

A trial *de novo* was had in the Ford County district court on August 27, 1969. After hearing the testimony of essentially the same witnesses, as those appearing before the juvenile court, the district court concluded that Starlette was a dependent and neglected child; that appellant was an unfit person to have custody of such dependent and neglected child; and that appellant's parental rights should be permanently severed.

The trial court's conclusions meet the requirements specified by the statutes with respect to the severance of parental rights. Starlette was determined to be a dependent and neglected child within the terms of K. S. A. 1969 Supp. 38-802 (*g*), now 1970 Supp. The appellant was found to be an unfit person pursuant to the provisions of 38-824 (*c*) supra, which require that the parents, or parent, must be found and adjudged to be unfit persons, or person, before the juvenile court may make an order permanently depriving such parents, or parent, of their (his or her) parental rights.

Appellant does not challenge the adjudication that Starlette is

a dependent and neglected child; thus, the pivotal question in this appeal is whether the finding of unfitness is supported by satisfactory evidence.

The trial court's findings, pertinent to the issue, are:

"That Starlette Armentrout is a child less than 16 years of age (8 years old at the time of her statutory rape).

"That the environment and association in the home of her natural mother, Karen G. Armentrout Jones, has been injurious to her welfare in the past and has definite prospects of being injurious in the future if said child were to be returned to her custody.

"That while said child, Starlette Armentrout, was in the custody of said natural mother she was raped by her stepparent; further, that the evidence indicates that Quana Armentrout, another child of Karen G. Armentrout Jones, who is younger than Starlette, experienced the same mistreatment.

"That the said Gene Jones was found guilty of statutory rape of said Starlette Armentrout by a jury in Ford County on October 16, 1968, and is now under sentence to the Kansas State Penitentiary at Lansing, Kansas, pending appeal to the Kansas Supreme Court.

"That Karen G. Armentrout Jones has failed, neglected and/or refused to recognize the implication of the known facts of injuries to her children, and the ultimate harm visited upon them physically and emotionally, and she has apparently consistently stood by her husband, Gene Jones, and contends that the little girls were injured by another method; that said Karen G. Armentrout Jones in her testimony maintains that she wants to continue the marriage and bring Gene Jones back into the home when and if he is released; thus she fails, neglects and/or refuses to appreciate the potential jeopardy into which these little girls would be placed and the attending apprehension and probable ultimate harm to them."

The court concluded:

"That the said minor child, Starlette Armentrout, is a dependent and neglected child as contemplated by K. S. A. 38-802 (g).

"That the mother, Karen G. Armentrout Jones, is an unfit person to have custody of such dependent and neglected child, and that parental rights should be permanently severed in accordance with K. S. A. 38-824.

"That said child should be made a ward of the Juvenile Court of Ford County, Kansas, and should be committed to the State Department of Social Welfare, with authority to place such child in a family home, give consent for the adoption of such child, and be a party to proceedings for legal adoption of the child."

We should pause, at this point, to note that after appellant moved to Tipton, Oklahoma, in December of 1968, the other children have not been within the jurisdiction of the Ford County juvenile court, nor under the supervision of the State Department of Social Welfare.

Before further considering the evidence with respect to the issue

of appellant's unfitness, we should take note of well-established rules of this court pertaining to the severance of parental rights. While the welfare and best interests of children are of paramount consideration in determining an award of custody, as between parents whose marriage has been separated by divorce or separate maintenance, in a proceeding to sever parental rights, the welfare of the child or children must be considered in conjunction with the rights of the parents. A parent will not be permanently deprived of the parental rights to a child unless such parent is found to be an unfit person. The rule and reasoning in support thereof is well stated by Justice Dawson in *In re Kailer*, 123 Kan. 229, 255 Pac. 41:

> "Noting respondents' objections to this judgment, it is urged that the welfare and best interests of the children were the paramount issue. Under the law of the land the welfare and best interests of children are primarily the concern of their parents, and it is only when parents are unfit to have the custody, rearing and education of children, that the state as *parens patriae,* with its courts and judges, steps in to find fitting custodians *in loco parentium.*
>
> . . . . . . . . . . . . . .
>
> "Putting the matter in another way, it is quite correct to say that the welfare of children is always a matter of paramount concern, but the policy of the state proceeds on the theory that their welfare can best be attained by leaving them in the custody of their parents and seeing to it that the parents' right thereto is not infringed upon or denied. This is the law of the land on this subject. And it never becomes a *judicial* question as to what is for the welfare and best interests of children until the exceptional case arises where the parents are dead, or where they are unfit to be entrusted with the custody and rearing of their children and have forfeited this right because of breach of parental duty, or where the right has been prejudiced by the discord of the parents themselves. There are enough of the latter sort of cases where the courts are compelled to interfere and take the custody of children from unfit parents, or to decide which of quarreling parents should have their custody. . . ." (pp. 230-231.)

The rule stated in *Kailer* was quoted in *Christlieb v. Christlieb,* 179 Kan. 408, 295 P. 2d 658, and again in the case of *In re Vallimont,* 182 Kan. 334, 321 P. 2d 190, wherein it was further pointed out:

> "It is definitely established that when the custody of children becomes an issue as between parents, the primary question to be determined by the court is the welfare and best interests of the children, and all other questions are subordinate thereto . . . But this is not the situation presented by the facts in the instant case. Here the father seeks custody from the maternal grandparents." (pp. 336-337.)

To further settle the matter, Justice Schroeder in the *Vallimont* opinion quoted with approval from the decision in *Stout v. Stout,* 166 Kan. 459, 201 P. 2d 637:

" '. . . It will suffice to say that if there is any language to be found in any of our decisions justifying the construction that the children of a natural parent may be given to third persons without a finding such parent is an unfit person to have their custody it should be and is hereby disapproved.' " (p. 337.)

The statutes under which this proceeding is brought actually amount to a codification of the rulings pertaining to severance of parental rights which have been laid down by this court in the cases mentioned.

In the case of *Lennon v. State,* 193 Kan. 685, 396 P. 2d 290, this court considered severance of parental rights under the provisions of the Juvenile Code in essentially their present form. Considerable emphasis was given the welfare of the child, but a careful examination of the evidence recited and the evaluation thereof clearly indicates the court tacitly said the mother was unfit. She was described in these terms:

". . . Mary's record throughout her adult years reveals gross instability and lack of moral fiber. . . ." (p. 690.)

Further in the opinion it was said:

"We readily agree that parental rights are not to be considered lightly, and this court has always been diligent in their protection. (*Swarens v. Swarens,* 78 Kan. 682, 97 Pac. 968; *Pinney v. Sulzen,* [91 Kan. 407, 137 Pac. 987], supra.) However, when the welfare of a child so demands, the rights of its parents must yield to the paramount right of their offspring to receive proper parental care, guidance and control. Where such be the case, the state, in the rightful exercise of its power as *parens patriae,* has the duty to intervene on behalf of the child in furtherance of its legitimate interests. (citing case)." (p. 691.)

In determining questions concerning custody or severance of parental rights, a close relationship exists between the fitness of a parent to have custody and the welfare of the child whose custody is in issue. While a higher degree of proof is required with respect to parental rights, the unfitness of a parent controls as to an issue of custody between a parent and a third party as well as with respect to severance of parental rights. In either case the parent must be found to be an unfit person. (*Finney v. Finney,* 201 Kan. 263, 440 P. 2d 608.)

The term "unfit" is not defined by statute. It therefore must be given its ordinary significance, having due regard to the context.

In the recent case of *Finney v. Finney,* supra, wherein the issue was custody between a parent and a third party, the word "unfit" was defined in these terms:

"The word 'unfit' means, in general unsuitable, incompetent or not adapted

for a particular use or service. As applied to the relation of rational parents to their child, the word usually although not necessarily imports something of moral delinquency. Unsuitability for any reason, apart from moral defects, may render a parent unfit for custody." (Syl. ¶ 2.)

See, also, *In re Villimont*, 182 Kan. 334, 321 P. 2d 190.

In the instant case the trial court had before it the testimony of appellant, Starlette and the transcript of the prosecution of the stepfather for the statuory rape of Starlette. We need go no farther to find clear and satisfactory evidence to sustain the trial court's findings. In her own testimony, appellant stated that she desired custody of Starlette and would request it even if Mr. Jones were returned at the present time. She admitted that there might be complications, but said: "I think we can work everything out." Appellant strenuously argues that she should not be faulted because of her belief in the innocence of Jones. Her position in this regard can be understood, but nevertheless Jones was convicted by a jury, the conviction was approved by the district court and on appellate review by this court.

The facts surrounding the rape of Starlette and the injury suffered are fully set out in our opinion in *State v. Jones,* supra. It is not necessary to repeat them here.

We believe the trial court's finding of unfitness of the appellant, due to her willingness to risk the further injury of Starlette, under the circumstances related to be justified. The appellant's testimony reflects that she gives more importance to her relationship with Jones than to the welfare of Starlette.

Although not mentioned by the trial court, we note testimony in the record by appellant that she thought Starlette was mixed up. There is testimony by social workers that some of the other children thought Starlette had been bad and that she had been telling bad things about her daddy.

Starlette testified that she would not want to go home if Mr. Jones were there and that she would be afraid of him.

While the testimony of appellant's witnesses indicated that she might be rehabilitating herself in her home in Oklahoma, nevertheless, she persists in her desire to bring the stepfather back into the home on his release from prison regardless of the consequences. Appellant's insistence that Jones is innocent marks Starlette as either being mixed up or a liar; a circumstance which would make Starlette's position intolerable if she were to be returned to the home of appellant.

Necessarily we have compassion for this unfortunate mother, but sympathy cannot be allowed to overshadow the circumstances surrounding Starlette's return to this home. There is clear and satisfactory evidence to support the finding and judgment of the trial court and it must be affirmed.